## Case No. 9,962.

MURRAY et al. v. LAZARUS et al.

[1 Paine, 572.] [1]

Circuit Court, S. D. New York. Oct. Term, 1826.

SHIPPING — ADVANCES IN FOREIGN PORT — HYPOTHECATION—TAKING DRAFT—EQUITABLE ASSIGNMENT.

1. The master may hypothecate vessel and freight, in a foreign port, for advances necessary for repairing and provisioning the vessel, if such advances cannot be procured on the credit of the owner.

2. Whether, by the maritime law, the contracts of the master, under such circumstances, for necessaries, create a lien without an express hypothecation? Quere.

3. But if they were admitted to have such effect, an express contract for payment would be a waiver of the implied lien. As where a vessel bound from New-Orleans to New-York, put into Wilmington in a damaged state, where the master, having no other means, obtained advances from the libellants for the necessary repairs, and gave them a draft for the amount on his consignees, which was afterwards protested for nonacceptance. On a libel against the freight, in the hands of the consignees, held, that the taking of the draft was a waiver of the lien if any existed.

[Cited in The Amstel, Case No. 339; Phelps v. The Camilla, Id. 11,073; Leland v. The Medora, Id. 8,237; Marshall v. Bazin, Id. 9,125.]

[Cited in Harned v. Churchman, 4 La. Ann. 310.]

4. The draft was expressed to be "for value received in disbursements, and repairs of the brig Hannah," with directions to charge the same to her account, and signed by the drawer as master: Held, that the draft was not an hypothecation of the freight, as it wanted all the requisites, such as an express pledge, maritime interest, risk of the lender, of an instrument of hypothecation.

5. Nor has such draft the effect of an equitable assignment of the freight, as a draft on a specific fund.

[1] [Reported by Elijah Paine, Jr., Esq.]

[6. Cited in The William & Emmeline. Case No. 17,687, to the point that in the adjudication of maritime questions United States courts consider the states foreign in relation to each other.]

[Appeal from the district court of the United States for the Southern district of New York.]

This was an appeal from a decree of the district court of the Southern district of New-York, establishing a lien on freight and general average, for necessary repairs and supplies for the vessel, furnished in a foreign port. The libel stated, that the brig Hannah, Thomas Hillyer, master, of Eastport, in Maine, owned by Jonathan Bartlett, of that place, sailed from New-Orleans for New-York, on the 4th of March, 1826, consigned to John B. Murray & Son, of New-York, having on board a cargo consigned to different merchants in New-York: That she was obliged, on account of damages occurring on her passage in her spars and rigging, to put into Wilmington, North Carolina, in distress: That the master or owners had no funds, nor correspondents at Wilmington, and the vessel requiring repairs and provisions for the voyage, the libellants [Lazarus & Whitmarsh], at the request of the master, expended on her, and to enable her to prosecute her voyage, 536 dollars 30 cents, whereby she was enabled to complete her voyage, and arrive at New-York. That the libellants, as a voucher for their expenditures, and as a mere mode of obtaining payment, took from the master a draft upon the said John B. Murray & Son, the consignees of the vessel, and agents of the owner, for payment to them, or their order, of the amount due them, which payment was expected and intended to be made out of the freight of the vessel, and the contributions for a general average on account of the said damages. That John B. Murray & Son, on the arrival of the vessel at New-York, exacted from the consignees of the cargo an obligation for the payment of their respective shares of the general average which they still held, and claimed or had received the payment of the freight. The libel also stated, that payment of the draft was refused on presentment; that the master was unable to pay the debt, and that neither he nor the owner could be arrested on process; that the vessel had been transferred to Israel Foot, who had not yet paid the whole price, and that all the parties had received notice of the libellants' claim. Process of attachment was prayed against the monies and credits belonging to the master or owner, in the hands of any of the parties.

The answer of John B. Murray & Son set forth the following facts as matters of defence:—That the libellants, while the vessel was at Wilmington, wrote to them, informing them that she required repairs, and desiring to know if the master's bill on them for 300 or 400 dollars, for advances to him for that object, would be accepted: That they replied, through their agent, that it would not be accepted; which reply, they believed, was duly received by the libellants, who, however, made the advances and permitted the brig to depart without waiting for it: That John B. Murray & Son had long done the business of the said owner, Bartlett, and that a balance of 17,000 dollars was now due them from him: That they had received nothing on account of the general average, and only 579 dollars 37 cents of the freight, of which they had paid 122 dollars 38 cents for expenses of the vessel before notice of the libellants' claim, and 337 dollars 32 cents to the master before notice of the attachment, and that a balance of 108 dollars 19 cents, after deducting their commissions, remained in their hands. The balance of freight, in their hands, they insisted on retaining for their general balance against Bartlett.

The bill of exchange drawn in favour of the libellants, as mentioned in the libel, was as follows:—"Wilmington, 25th April, 1826. Exch. $531.55 cts. Five days after sight of this first of exchange, (second unpaid,) pay to the order of Lazarus & Whitmarsh, five hundred and thirty-one dollars, fifty-five cents, for value received in disbursements and repairs of brig Hannah, and charge the same to her account. Your obedient, Thomas Hellyer, master of brig Hannah. Messrs. John B. Murray & Son, New-York." The consignees of the cargo not having appeared, their default was entered.

The court decreed that the libellants were entitled to a specific lien on the contributions for general average; and to such lien on the freight received by John B. Murray & Son, for the amount of said bill of exchange; and that the general averages, and the freight after deducting therefrom 122 dollars 38 cents, being expenses paid at New-York, incurred after the arrival of the vessel, and as payment before notice of the libellants' claim, should be paid into court to satisfy the demand of the libellants. From this decree John B. Murray & Son appealed. The consignees of the cargo submitted, and paid the general average into court.

R. Sedgwick, for appellants, insisted: (1) That Wilmington was not a foreign port within the rule of law, as to maritime liens. Abb. Shipp. 136, pt. 2, c. 2, passim. (2) That by taking the bill, the lien, if any had existed, was lost. Yeates v. Groves, 1 Ves. Jr. 280; Roe v. Dawson, 1 Ves. Sr. 331; M'Menomy v. Ferrers, 3 Johns. 71; Stevens v. The Sandwich [Case No. 13,409]; Mandeville v. Welsh, 5 Wheat. [18 U. S.] 277. (3) That by the payment over before the attachment was laid, the defendants were protected; and that they had a right to retain the balance on their general account with the owner.

D. Lord, for respondents, contended: (1) That by the maritime law, the claim of the libellants formed a lien on the vessel and her freight. The Jerusalem [Case No. 7,294]; Watkinson v. Bernadiston, 2 P. Wms. 367; Hus-

sey v. Christie, 13 Ves. 599; Ex parte Shank, 1 Atk. 234; The Jacob, 4 C. Rob. Adm. (Am. Ed.) 245. (2) That the bill in question was an instrument, on its face importing payment to be made out of the earnings of the vessel, and was therefore to be considered either an assignment or hypothecation of the freight. Ex parte Halkett. 3 Ves. & B. 135; Peyton v. Hallett, 1 Caines, 364; The Rebecca, 5 C. Rob. Adm. 102, 105.

THOMPSON, Circuit Justice. The only inquiry arising upon the appeal in this case, is, whether the respondents have a specific lien upon the freight monies, (received by the appellants,) for the advances made by them for the repairs of the brig Hannah, at Wilmington in North Carolina. That these expenses were properly and necessarily incurred, is not denied; nor can the authority of the master, to hypothecate the freight as well as the vessel for the payment of such expenses, be questioned. He is the agent of the owners, and they are bound by all lawful contracts made by him. It is indispensable that he should have a right to contract for all necessary repairs and supplies for the vessel on the voyage, and may, therefore, indirectly bind the owners to the value of the vessel and freight. It is therefore well settled, that he may for like purposes, expressly pledge and hypothecate the vessel and freight, and thereby create a direct lien upon the same for the security of the creditor. [The Aurora] 1 Wheat. [14 U. S.] 102; Abb. 134. But this being a high and important trust reposed in the master, the authority is to be exercised cautiously, and he is not at liberty to subject the ship or freight to this expensive and disadvantageous lien, if such repairs and supplies can be procured upon the credit of the owner independent of such hypothecation.

The case is not open for the inquiry, whether, by the general maritime law, every contract made by the master for repairs and supplies for his ship whilst on a foreign voyage, does not import an hypothecation. When an express contract has been entered into for the payment of such expenses, that must be resorted to, and will be considered a waiver of such implied lien if any existed. And a party who has waived his right in this respect cannot be permitted, at a subsequent time, and under a change of circumstances to reinstate himself in his former condition to the injury of others.

In this case there was a special agreement between the master and the respondents for the payment of their advances. They took from him a bill of exchange, drawn upon the appellants, for the amount of their advances and commissions. If this is to be considered a regular and ordinary bill of exchange, it was a substitution for any lien that might have existed, and must be considered a relinquishment thereof.

But it is contended, that from the language of the bill, taken in connexion with the condition of the parties, it must be considered a lien on the freight in the hands of the appellants. If such is to be the effect and operation of this bill, it must be either as an hypothecation of the freight, or as a draft upon a specific fund amounting to an assignment of such fund.

The bill is drawn by Thomas Hillyer, as master of the brig Hannah, on the appellants, payable to the order of Lawrence & Whitmarsh, five days after sight, for 531 dollars 55 cents, for value received in disbursements and repairs of the brig Hannah, with directions to charge the same to her account. It is these latter words that are said to give to this bill the operation of an hypothecation. In all other respects it is in the usual form of bills of exchange drawn in sets.

I cannot think that the mere circumstance, of the nature of the consideration's being expressed in the bill, with directions to charge it to the account of the brig, should entirely change the character of the instrument. This was a very natural and proper course for the master, especially when drawing upon the consignees of the brig, that they might understand for what the bill was drawn, and that it was not a private transaction of the master.

It is laid down by Abbot in his Treatise on Shipping (page 143) that there is no settled form for the contract of hypothecation, "but that, whatever be the form, the occasion of borrowing, the sum, the premium, the ship, the voyage, the risk to be borne by the lender, and the subjection of the ship itself as security for the payment, all usually are; and properly ought to be expressed." The bill in this case falls very far short of containing some of the most essential requisites; it does not in terms or by implication pledge the freight for the payment; the freight is not even named in the bill. There is no premium mentioned, nor any thing either in the bill or any of the proceedings showing that maritime interest was allowed. And indeed the contrary is shown by the proofs; for the account annexed to the libel contains the items which made up the amount of the bill, in which the usual commissions alone are charged upon the advances. But what is of still more importance, there is nothing showing what, or that any risk was to be borne by the respondents. The owners of the vessel are still liable for these advances.

The libel does not even contain any allegation of an agreement in any manner, that the freight should be pledged for the payment of the advances; it only alleges, that the bill was taken as a voucher for the expenditures, and a mere mode of obtaining payment thereof; which payment was expected and intended to be made out of the freight, &c. This is no allegation of an agreement between the master and the respondents, that it should be so paid; it is nothing more than the mere expectation and intention of the respondents. And there is no proof, giving the least colour to an inference, that there was any un-

derstanding between the parties that the freight should be pledged for payment of the bill. And the conduct of the respondents shows, that they did not so understand the transaction; for, on the 14th of April, they wrote to the appellants, that the vessel had put into Wilmington in distress, and that the master wanted advances for repairs, and proposed drawing in their favour on the appellants for the amount that would be required, and requesting to know whether such bill would be honoured. If it had been understood that the freight was to be pledged for these advances, no such letter would have been written. The master having the right to hypothecate the freight, there could have been no necessity for writing at all to the appellants; but if any communication was made, it would have been to inform them of the hypothecation, if such had been the fact, and not an inquiry whether they would honour the master's draft. But before the answer of the appellants was received, the repairs were completed. and the brig had sailed, the master giving to the respondents the draft in question. dated the 25th of April. This draft was endorsed and sent on here, and dealt with as an ordinary bill of exchange, by presenting it for acceptance and payment, and on refusal, having it regularly protested. No part of the transaction will, therefore, warrant the conclusion, that any express hypothecation was agreed upon or intended by the parties.

Nor is there any more foundation for considering this bill of exchange as a draft on the freight as a specific fund, and amounting to an equitable assignment thereof. No fund whatever is mentioned or referred to in the draft. And the direction to charge the amount of the bill to account of the brig, cannot certainly have the operation of an assignment of the freight.

'In whatever light, therefore, this case is considered, it appears to me that there is no specific lien on the freight for the advances for repairs. But that the respondents took the draft on the appellants as an ordinary bill of exchange, in payment for their advances; and whatever remedy they may have against other parties for the payment thereof, the appellants cannot be made responsible.

The decree of the district court, therefore, as to them, must be reversed with costs.